**UNITED STATES, Appellant,**

v.

**Melvin DOWLING, Appellee.**

No. 5351.

District of Columbia Court of Appeals.

Argued Sept. 22, 1970.

Decided Dec. 3, 1970.

---

4. *See* Metzler v. Edwards, D.C.Mun.App., 53 A.2d 42 (1947).

Warren L. Miller, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Daniel J. Bernstein, Asst. U. S. Attys., were on the brief, for appellant.

William J. Garber, Washington, D. C., with whom Meredith C. Coffman, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and KELLY and KERN, Associate Judges.

KELLY, Associate Judge:

This is an appeal by the Government from the grant of appellee's pretrial motion to suppress.[1] We reverse.

Officer Randy L. Lehmann, the sole witness on the motion, testified that on March 21, 1970 he and his partner, working in plain clothes, were cruising in an unmarked car in the Northwest section of the District of Columbia when they were waived to the curb by an elderly man who was known to them only by sight.[2] The unidentified citizen told them that a man wearing a long black overcoat[3] had a gun in his pocket and had just gone down an adjacent alley. The officers asked the informant to remain on the corner in case there was any shooting, then drove into the alley which had been pointed out to them. The only person they saw in the alley was the appellee who was wearing a long black overcoat. When appellee observed the unmarked police car he accelerated his pace down the alley. The officers approached appellee, identified themselves, and told him that they wanted to speak to him for a moment. Lehmann's partner told appellee to remove his hand from his right front pant's pocket, but appellee did not do so until Lehmann pointed his service revolver at him. After appellee had removed his hand the officers observed a large bulge remaining in the pocket. Lehmann's partner reached over, felt the pocket and said: "I think I've got the gun."[4] He then put his hand in appellee's pocket and removed, first, a 3 x 5" pad and numbers slips, then $223.00 in currency, a pencil and a piece of carbon paper. Appellee was placed under arrest for possession of numbers slips,[5] after which the officers returned to the

1. D.C.Code 1967, § 23–105(b) (Supp. III, 1970).

2. At some prior time Officer Lehmann had stopped this same man in connection with a traffic matter, so that the man was aware that they were police officers.

3. The officer testified on direct examination (R. 4) that the man was described as "wearing a long black overcoat". On cross-examination (R. 10), he could not remember whether the informant had said that the man was wearing "a long dark or black * * * trench coat or overcoat."

4. R. 7.

5. D.C.Code 1967, § 22–1502.

corner with appellee but the unidentified citizen was no longer there.

The pretrial motion to suppress was granted, and this appeal by the Government followed. The trial judge gave no reason for his ruling.

The Government relies upon Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to sustain the search and seizure. *Terry* requires that in an on-the-street confrontation resulting in a stop and frisk, two areas must be examined to determine whether or not the search and seizure was reasonable: 1—"whether the officer's action was justified at its inception," and 2—"whether it was reasonably related in scope to the circumstances which justified the interference in the first place." [6]

Appellee does not attempt to counter the Government's argument that the officers were justified in their initial action in stopping appellee when an unidentified citizen, known to them by sight and whom they had no reason to disbelieve, had told them that a man with a gun in his pocket had just proceeded down a nearby alley, and after they had entered the alley and had seen appellee, the only person there and one who fit the description given. At this point the officers were clearly confronted with a situation necessitating further investigation, including asking appellee to stop so that they could speak to him.

Appellee does, however, disagree with the Government's contention that the search was reasonably limited in scope to the circumstances which justified the stop. There is no doubt, we think, that armed as they were with what they believed was credible information that appellee had a gun in his pocket, coupled with appellee's reluctance to remove his hand from his pocket and the obvious large bulge in the pocket which they observed when he did so, the officers were amply justified in conducting a limited protective search for weapons.[7] But, says appellee, a search for weapons "must be limited to that which is necessary for the discovery of weapons * * *"[8] and evidence seized cannot be introduced "if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation."[9] Appellee's complaint is that the search here exceeds permissible bounds since in the pat-down it should have been obvious to the police officer that there was no weapon in appellee's pocket or even assuming the officer thought that he had discovered a gun, once he put his hand in appellee's pocket he should have known by the feel of the contents that there was no gun in the pocket and should have removed his hand without removing the pocket's contents. We do not agree. As we said, the original pat-down of appellee's pants pocket, under an open topcoat, in which there was a visible bulge, was reasonable in light of the circumstances. We think it reasonable also, when the one officer claimed to have found the gun, for him to reach his hand into appellee's pocket and remove the contents. The first items removed were the pad and what the officer recognized as numbers slips, then the $223.00 in currency,[10] after which there was an immediate arrest and a subsequent more extensive search. In our judgment, this search and

---

6. 392 U.S. at 19–20, 88 S.Ct. at 1879.

7. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Marshall, U.S.App.D.C. (No. 22,485, decided June 30, 1970). *See also* Gaskins v. United States, D.C.App., 262 A.2d 810 (1970).

8. 392 U.S. at 26, 88 S.Ct. at 1882.

9. *Id.* at 29, 88 S.Ct. at 1884.

10. The fact that what was removed from the pocket turned out to be numbers slips and money rather than a weapon does not render these items inadmissible in evidence. Sibron v. New York, 392 U.S. 40, 79, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (concurring opinion of Justice Harlan); Worthy v. United States, 133 U.S.App. D.C. 188, 409 F.2d 1105 (1968).

seizure rests on adequate constitutional grounds. It was therefore error to grant the motion to suppress.

Reversed and remanded.