**Santiago FLORES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–100–CR.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 30, 1992.

Discretionary Review Refused
April 29, 1992.

Pedro P. Garcia, Corpus Christi, for appellant.

Thomas L. Bridges, Sinton, for appellee.

## OPINION

SEERDEN, Justice.

Appellant was convicted on his *nolo contendere* plea of possession of less than twenty-eight ounces of cocaine. The trial court assessed punishment at eight years confinement in the Texas Department of Criminal Justice, Institutional Division. By one point of error, he complains that the trial court erred in overruling his motion to suppress the seizure of the cocaine. We agree with appellant and reverse and remand.

The evidence shows that on July 3, 1990, at about 7:45 a.m., Officer Scheurich, who had been certified as a peace officer for approximately two and one-half years, had been employed by the Ingleside Police Department for approximately three months and had worked for at least two other law enforcement agencies in San Patricio County during the time he was a peace officer, stopped a car for traveling 64 m.p.h. in a 50 m.p.h. zone. Appellant was a passenger in the car and there was no evidence that he displayed any unusual, suspicious or furtive conduct at any time. The officer admitted there was no difficulty in stopping the car and that the driver was cooperative. The officer became suspicious because the driver appeared to be extremely excited and nervous. After checking and determining that there were no outstanding warrants against the driver, the officer ob-

tained the driver's consent to search the car. He then waited for a "back-up" unit to arrive, which was a standard safety procedure when a search of a car was to be made or when there was more than one individual involved. When the back-up unit arrived, the officer had the passenger get out of the car and go to the side of the road. He noticed a bulge in the passenger's left front pants pocket that he described as being "two by three" or "three by four" inches in size. He had no idea what the bulge was. He volunteered that in his experience it could have been a wallet, money, or anything. He stated that he had found knives behind a wallet or wad of money. He then conducted a "pat down" of appellant, which included patting the outside of the left front pants pocket. He felt no weapon but felt "a semi-firm square object ... and then I could feel something firmer." The officer testified this "convinced him there might be a weapon there." He then put his hand in the pocket and felt what appeared to be rolled up and folded cash, he felt down further and felt "a whole large amount of loose change. I believe that was the firm object I felt. And I also felt what felt like a plastic bag." He then removed the plastic bag and saw a whitish powdery substance in the bag which he believed to be cocaine. He then arrested and handcuffed appellant.

■■■ Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable, subject to only a few exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The bill of rights of both the United States and Texas Constitutions declares that people shall be secure in their persons and possessions from unreasonable searches or seizures. The Fourth Amendment to the United States Constitution, Article 1, § 9 of the Texas Constitution and Tex.Code Crim. Proc.Ann. art. 38.23(a) provide that no evidence obtained by an officer in violation of the Constitution or laws of the United States or the State of Texas shall be admitted into evidence against the accused on the trial of any criminal case.

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), represents one of the exceptions to the requirements of prior judicial approval of searches and seizures. This landmark case discusses in depth the competing interests, rights, and duties of citizens to be secure in their persons and property and of law enforcement personnel to perform their valuable and essential functions in a practical, effective, and safe manner. In reflecting on the importance of the competing interests involved, the *Terry* Court observed, "no judicial opinion can comprehend the protean variety of the street encounter and we can only judge the facts of the case before us." *Terry*, 392 U.S. at 15, 88 S.Ct. at 1876. After its discussion of the problems and interests to be considered, the Court announced the following measuring test:

> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. (citations omitted). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) followed *Terry* and is considered to be controlling by the State. In our view, the facts of *Mimms* are substantially different and distinguishable. Mimms was the operator of the vehicle which was stopped for a traffic violation. When he got out of the car, the officer noted a large bulge under Mimms'

sport jacket. Because the officer feared the bulge might be a weapon, he frisked *Mimms* and discovered a .38 caliber revolver. The Court held that the search was reasonable, observing that "the bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted a 'pat down.'"

In this case, the officer patted down appellant, reached into his pocket, and removed its contents. In focusing on the officer's seizure of the plastic bag from appellant's pants pocket rather than on the pat down or the officer's initial intrusion into appellant's pocket, we conclude that the removal of the bag was impermissible under our constitutional protections.

■ The only possible justification for the officer's intrusion into appellant's pocket was the officer's safety while he carried out the consensual search of the vehicle. From the initial intrusion, the officer was able to determine that appellant did not possess any item which would have been a threat to his safety. Thus, even if it was reasonable for the officer to invade appellant's person by exploring the inside of his pants pocket, the officer did not have any right to remove its contents once he discovered that appellant possessed no threatening items.

■ Furthermore, there was no showing even after the officer felt what was contained in the pocket that appellant was guilty of any offense. The burden was on the State to show that the warrantless seizure of the plastic bag was not unrea-

sonable. *Keah v. State*, 508 S.W.2d 836 (Tex.Crim.App.1974). We hold that the State failed to meet his burden and sustain appellant's point of error.

The judgment of the trial court is reversed and the cause remanded to the trial court.

NYE, C.J., dissents with opinion.

HINOJOSA, J., not participating.

NYE, Chief Justice, dissenting.

I respectfully dissent. The majority has *sua sponte* decided a critical issue affecting the scope of an investigative pat-down search for weapons. The majority holds that the warrantless seizure of the plastic bag containing the cocaine from appellant's pocket was impermissible. It holds that even if Officer Scheurich had a reasonable basis to invade appellant's person by exploring the inside of his pants pocket, he did not have any right to remove the plastic bag once he thought that the pocket did not contain any threatening items. Appellant did not contend in his motion to suppress or at the hearing on the motion to suppress that the scope of the search exceeded what was permissible in an investigative pat-down search for a weapon; and nothing exists in the record to show excessiveness in this respect.[1] This issue was never before the trial court and is not preserved for review. Tex.R.App.P. 52(a); Tex.R.Crim. Evid. 103(a)(1). *Cf. Worthy v. United States*, 409 F.2d 1105, 1109 (D.C.Cir.1968). Even if the issue had been preserved, I find that the investigative pat-down search of appellant was reasonable under the facts of this case and that it was conducted consist-

---

**1.** Appellant's motion to suppress stated, in relevant part (emphasis mine):

> Defendant hereby states that the investigating officer had *no probable cause to search the vehicle or to ask that the said Defendant be searched.* On this basis, the Defendant hereby prays that the Court rule that the search of the person of SANTIAGO FLORES was illegal and any and all evidence obtained through this illegal search be excluded from evidence in this case.

After the evidence was heard on the motion to suppress, appellant's counsel informed the trial court that:

> I am really questioning the legality of asking to search the vehicle.
>
> Now, I do understand that the vehicle belongs to Mr. Gonzales [the driver], but this is Mr., you know, he was an occupant of that vehicle, and I, this is why I think we have standing to challenge the search, you know, the request for the search of the vehicle, and what happened, you know, after that. And based on that, I ask that the, that the evidence be suppressed, Your Honor.

ent with our state and federal constitutions. Therefore, the seizure of the cocaine, though not a weapon, was lawful and admissible into evidence.

The standard of review governing a trial court's ruling on a motion to suppress is whether the trial court abused its discretion. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex.Crim.App.1979). The trial judge is the sole fact finder at the hearing on the motion to suppress and may choose to believe or disbelieve any or all of a witness' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980).

Viewing the evidence in the light most favorable to the prosecution, in July, 1990, Officer Scheurich stopped a car for speeding in the City of Ingleside. Appellant was the only passenger in this car and was seated in the right front seat. The driver, Manuel Gonzales, got out, and Scheurich wrote him a ticket. Then, Scheurich asked him if he could look through his car. Gonzales did not object, so Scheurich filled out a "consent to search form." He asked Gonzales to read it, and he told him to sign it if he agreed to the conditions. Gonzales signed the form. When Officer Sellers arrived at the scene, Scheurich asked appellant to get out of the car so that he could search it. Appellant stepped to the side of the road, and Scheurich saw a large, three-by-four-inch, square bulge in his left front pocket. Scheurich had no idea what the bulge was, but he testified that it could have been a weapon. He said that he has patted down persons with similar bulges in their front pockets and found weapons, usually knives. While Sellers was with Gonzales, Scheurich did an investigative pat-down search on the outside of appellant's clothing to determine if he could feel a weapon. He could feel that the bulge was a semi-firm, square object. Underneath that object, he could feel something firmer. This convinced him that there might be a weapon in the pocket. He put his hand inside the pocket and found some rolled and folded-up cash, a large amount of loose change, and a plastic bag. He

removed the bag and saw that it contained a whitish powdery substance, which he believed to be cocaine.

Officer Moore transported appellant to the police station and booked him. After booking appellant, Moore did a final pat-down search of appellant's clothing before placing him in a jail cell. Moore found another plastic bag containing cocaine in the watch pocket of appellant's pants.

Appellant testified that with all of the coins and paper bills in his pocket, a knife might have been in the pocket. He said that a person would have to go into the pocket to find out that the pocket contained money.

Appellant filed a motion to suppress the search and the seizure of the cocaine.[2] After hearing the evidence, the trial court overruled the motion to suppress.

Once a valid traffic stop is made, officers at the scene are entitled to take sufficient measures to guarantee their safety. *Goodwin v. State*, 799 S.W.2d 719, 727 (Tex. Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991). Police officers are allowed to order drivers out of their cars once they have been lawfully stopped for a traffic violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977); *Goodwin*, 799 S.W.2d at 727. The officer may frisk occupants for weapons if a reasonable belief exists that they are armed and dangerous. *Michigan v. Long*, 463 U.S. 1032, 1047–48, 103 S.Ct. 3469, 3479–80, 77 L.Ed.2d 1201 (1983). *See Wood v. State*, 515 S.W.2d 300, 306 (Tex.Crim.App.1974) (automobile passenger just as subject to a reasonable stop and to a reasonable frisk as a driver or a pedestrian).

A police officer has the authority to conduct a reasonable search for weapons for his own protection when he has reason to believe that he is dealing with an armed and dangerous person, regardless of whether he has probable cause to arrest the person for a crime. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d

**2.** Appellant did not contend in his motion to suppress or in his appellate brief that the search and seizure of the cocaine violated the Fourth Amendment of the United States Constitution, art. I, § 9 of the Texas Constitution, or art. 38.23 of the Texas Code of Criminal Procedure.

889 (1968). A police officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man under the circumstances would be warranted in the belief that his safety or that of others was in danger. The intrusion must be based on specific articulable facts which, in the light of the officer's experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion. *Anderson v. State,* 701 S.W.2d 868, 873 (Tex.Crim.App.1985).

In *Mimms, supra,* two police officers stopped a car for the purpose of issuing a traffic summons. One of the officers asked Mimms to get out of the car and produce his owner's card and operator's license. Mimms got out, and the officer saw a large bulge under his jacket. Fearing that the bulge might be a weapon, the officer frisked Mimms and found a loaded revolver in his waistband. The Supreme Court stated (footnote omitted, footnote 3 mine):

> There remains the second question of the propriety of the search once the bulge in the jacket was observed.... [T]he answer is controlled by *Terry v. Ohio....* In that case we thought the officer justified in conducting a limited search for weapons once he had reasonable [sic] concluded that the person whom he had legitimately stopped might be armed and presently dangerous. Under the standard enunciated in that case—whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate"[3]—there is little question the officer was justified. The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of "reasonable caution" would likely have conducted the "patdown."

*Mimms,* 434 U.S. at 111–12, 98 S.Ct. at 334.

Here, like the case in *Mimms,* we are confronted with the action of a police offi-

cer who in the course of an investigation had to make an on-the-spot, snap decision concerning how to protect himself. He took limited steps to do so. The specific and articulable facts sufficient to warrant Officer Scheurich's conclusion that his safety was in danger were as follows: After he gained consent to search the car, he asked appellant to step outside. When appellant got out, he saw a large, three-by-four-inch, square bulge in appellant's left front pocket. Scheurich testified that the bulge could have been a weapon. He said that he had patted down persons with similar bulges and found weapons, usually knives. At this point, Scheurich patted down appellant's outer clothing. Scheurich's pat down was permissible because he had a reasonable belief based on "specific and articulable facts" which, taken together with the rational inferences from those facts, reasonably warranted him in believing that appellant was dangerous and that he may gain immediate control of a weapon. Here, the sole focus of suspicion was that appellant was armed. In these circumstances, any man of "reasonable caution" would likely have conducted the "pat-down." *See Mimms,* 434 U.S. at 111–12, 98 S.Ct. at 333–34; *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81; *United States v. Colin,* 928 F.2d 676, 678 (5th Cir.1991) (once officer saw bulge in accused's pocket, it was proper to do a more thorough search).

When Scheurich did the pat-down, he could feel that the bulge was a semi-firm, square object. Underneath that object, he could feel something firmer. Scheurich testified that this convinced him that there might be a weapon inside of the pocket. When he put his hand inside the pocket, he found a plastic bag containing cocaine. The fact that what was removed from appellant's pocket turned out to be a plastic bag containing cocaine rather than a weapon does not render the cocaine inadmissible in evidence. This issue has been address in *Wood v. State, supra,* and *United States v.*

3. *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81.

*Dowling,* 271 A.2d 406 (D.C.App.1970).[4]

In *Wood,* a police officer stopped a car for running a stop sign. The officer saw that the defendant, a passenger in the car, appeared intoxicated. The defendant was asked to get out. The officer patted him down and felt in the defendant's jacket pocket what he thought was the handle of a knife. He reached into the pocket and found three rolls of coins and some loose bills. The money was admitted into evidence at the defendant's trial. On appeal, the defendant contended that the money was found as a result of an illegal search and seizure, in violation of the Fourth Amendment to the United States Constitution and art. I, § 9 of the Texas Constitution. Relying on *Terry,* the Court of Criminal Appeals found no constitutional violations and held that the money was admissible into evidence.

In *Dowling,* a person told two police officers that defendant had a gun in his pocket. The officers found the defendant and saw a large bulge in his pocket. One of the officers felt the pocket and thought that the bulge was a gun. He put his hand inside the pocket and removed a 3 × 5 inch pad, numbers slips, some money, a pencil, and some paper. The defendant was arrested for possession of numbers slips. A pretrial motion to suppress was granted, and the government appealed. On appeal, the defendant argued that the search exceeded permissible bounds since in the pat

down it should have been obvious to the police officer that no weapon was in appellee's pocket, or even assuming the officer thought that he had found a gun, once he put his hand into the pocket, he should have known by the feel of the contents that no gun was in the pocket and should have removed his hand without removing the pocket's contents. Relying on *Terry,* the Court held that the search and seizure rested on adequate constitutional grounds and reversed the trial court.

The facts in this case are different from those in *Keah,* which was cited by the majority. Here, Officer Scheurich said that the bulge in appellant's pocket could have been a weapon. This statement was based upon his prior experience because he said that he had patted down persons with similar bulges and found weapons. When he did the pat down on appellant's outer clothing, he could feel that the bulge was a semi-firm, square object. Underneath that object, he could feel something firmer. He said that this convinced him that a weapon might be inside of the pocket. Only at this point did Scheurich put his hand into the pocket. In *Keah,* Officer Proctor did not do a pat down of Keah's outer clothing before reaching into the pocket. Proctor did not say that he thought that the bulge in Keah's pocket was a weapon.

Illegal weapons and drugs have permeated every phase of our society. It appears

---

**4.** *See Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (concurring opinion of J. Harlan). In *Sibron,* J. Harlan said, "Although the frisk is constitutionally permitted only in order to protect the officer, if it is lawful the State is of course entitled to the use of any other contraband that appears." *Sibron,* 392 U.S. at 79, 88 S.Ct. at 1910. In *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), the Supreme Court held that contraband, which was not the object of a search, but which was found during a valid search, may be seized and is admissible in evidence. *Abel,* 362 U.S. at 238–39, 80 S.Ct. at 696–97. In *Long, supra,* the Supreme Court held that "[i]f, while conducting a legitimate *Terry* search of the interior of ... [an] automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Long,* 463 U.S. at 1050, 103 S.Ct. at

3481, citing *Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983); *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971). Indeed, in *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Court throughout the opinion places in the same category of admissible evidence seized in a search incident to a lawful arrest, "instrumentalities, fruits, or contraband." *Hayden,* 387 U.S. at 300, 87 S.Ct. at 1646. And see the concurring opinion of J. Fortas, with whom C.J. Warren joined: "The seizure of contraband has been justified on the ground that the suspect has not even a bare possessory right to contraband." *Hayden,* 387 U.S. at 311, 87 S.Ct. at 1652; *see also Worthy, supra,* 409 F.2d at 1110 (a lawful search of a person for a weapon, which turned up illegal drugs, did not prevent the drugs from being admitted into evidence).

to me that the majority of police investigations involve one or the other. A citizen who chooses to possess illegal drugs should suffer the legal consequences when the drugs are found as an officer lawfully frisks him for a weapon. Once Officer Scheurich noticed the bulge in appellant's pocket, this permitted the minimal intrusion of a limited pat-down search of appellant's outer clothing. Once the pat down confirmed that the object in the pocket had the characteristics of a weapon, Scheurich was justified in reaching into the pocket. Scheurich had reasonable grounds to believe that appellant was armed and dangerous. It was therefore imperative for the safety of Officers Scheurich and Moore and the general public that Scheurich take the action that he did. Since the search was for a weapon, the seizure of the cocaine, though not a weapon, was lawful, and the contraband was admissible into evidence. I would hold that Scheurich's conduct clearly was reasonable under the Fourth Amendment of the United States Constitution and art. I, § 9 of the Texas Constitution. *See Wood, supra,* and *Dowling, supra.* I find that the trial court did not abuse its discretion in overruling the motion to suppress. I would affirm the trial court's judgment.