[No. 13225-1-III.   Division Three.   November 10, 1994.]

THE STATE OF WASHINGTON, *Appellant*, v. MATTHEW FLOYD FOWLER, *Respondent*.

*John D. Knodell, Prosecuting Attorney,* for appellant.
*Eric R. Weston,* for respondent.

SCHULTHEIS, J. — The trial court granted a defense motion to suppress because the arresting officer exceeded the scope of his authority in conducting a pat-down search during which a quantity of LSD was found. The State contends: (1) the officer was entitled to conduct a weapons frisk and finding drugs was inadvertent; and (2) even if the scope of the search was overbroad, discovery of the drugs falls within the plain view doctrine. We affirm.

On January 30, 1993, at 8:30 p.m., Washington State Patrol Trooper Gary McNinch observed a vehicle with a loud exhaust traveling at a high rate of speed and weaving. He fell in behind and clocked the automobile at 77 m.p.h. in a 65 m.p.h. zone. He activated his emergency lights. The driver slowed but failed to stop. Trooper McNinch turned on his high beams and trained a spotlight on the rear window. He observed the driver and Matthew Fowler moving around. Mr. Fowler reached toward the floor several times. After a mile, the driver brought his vehicle to a halt. Trooper Mc-Ninch called for backup and held the two men in the vehicle at gunpoint while waiting for a unit to arrive.

When the backup officer arrived, Trooper McNinch directed Mr. Fowler to exit the vehicle and frisked him for weapons. In a jacket pocket, he felt a hard object about 2 inches by 3 inches and two soft objects of indeterminate shape. Upon removing all three objects, he found the hard item was a pager. The two soft objects were cigarette packages with the tops removed; inside were 2,400 hits of LSD on blotter paper.

The trial court suppressed because the trooper had the time and ability to differentiate between the hard object, which might have been a weapon, and the soft ones which clearly were not. The trooper was satisfied that the soft objects were not weapons yet withdrew them thereby exceeding the scope of a weapons frisk.

Trooper McNinch testified he knew the soft objects were not weapons when he reached into the pocket. He was not specifically trying to withdraw the soft objects. He reached in and grasped everything he could in an effort to withdraw the hard object. Asked by the court why he did not limit his removal of items to the hard object, he answered: "I just attempted to get everything in an attempt to at least get the hard object." In an effort to rehabilitate, the State elicited the following testimony:

Q: Did you remove the soft items — were you intending to remove the soft items when you reached into Mr. Fowler's pocket?

> A: My intent was to at least get the hard object. But I was trying to get everything out of there to the point where I could at least get the hard thing and find out what it was.

The validity of a protective search hinges on three inquiries:

> The Fourth Amendment will be satisfied where the following requirements are met: (1) the initial stop must be legitimate; (2) a reasonable safety concern must exist to justify a protective frisk for weapons; and (3) the scope of the frisk must be limited to the protective purpose.

*State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993).

Mr. Fowler concedes the stop was legitimate. The trooper saw the driver of the vehicle commit three traffic infractions. He also concedes the patdown was permissible. Trooper McNinch observed furtive movements and the vehicle failed to pull over in a timely manner. The remaining issue is narrow: during the course of a protective frisk, may an officer remove items from a person which he knows are not weapons under the "single scoop" theory?

The State relies on *Collins* for the premise that the inadvertent discovery of contraband while conducting a legitimate frisk will not taint the evidence. Trooper McNinch did not know what he was withdrawing from the pocket, but he deliberately withdrew the cigarette packages knowing they were not weapons. In *Collins*, a suspect was searched during the course of a traffic stop. The officer felt a hard object in the suspect's back pocket which he thought was a knife. Upon removing the object, it in fact proved to be a knife. Along with the knife came a packet of methamphetamine which the officer recognized as a controlled substance. *Collins* pointedly noted the only issue on review was whether a reasonable safety concern existed which would justify a protective search for weapons. 121 Wn.2d at 170, 173. The scope of the search was not at issue.

The State also relies on *United States v. Dowling*, 271 A.2d 406 (D.C. 1970). In *Dowling*, a citizen informant advised police where they could find a man with a gun in his pocket. The officers located the man described and frisked

him for weapons. One of the officers believed he felt a gun. He reached into the pocket and withdrew a quantity of numbers slips. *Dowling* held that the entire contents of the pocket could be examined provided the officer believed he felt a gun. *Dowling*, at 408. *Dowling* has been cited by only one court outside the District of Columbia and that was in a dissent. *Flores v. State*, 824 S.W.2d 704, 706 (Tex. Ct. App. 1992) (Nye, C.J., dissenting). Coincidentally, *Flores* happens to be on close point with the facts of this case. Mr. Flores was a passenger in a vehicle stopped for speeding. The officer became suspicious of the driver and asked both men to step out of the car. Noticing a square bulge in Mr. Flores' pants pocket, the officer patted him down and felt a firm object which might have been a weapon. The officer reached into the pocket, felt some folded currency (which was the square bulge), loose change (which was the firm object), and at the bottom of the pocket was a plastic bag containing cocaine. *Flores* held that once the firm object which might have been a weapon was examined and determined not to pose a safety hazard, the justification for the search terminated. 824 S.W.2d at 706.

Our Supreme Court has recently revisited *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) and reaffirmed Washington State's commitment to the principles underlying that decision. *State v. Hudson*, 124 Wn.2d 107, 874 P.2d 160 (1994). A protective search must be justified in scope both at its inception and throughout the duration of the search. *Hudson*, at 112. Absent probable cause, the only justification for a weapons frisk is officer safety. *Hudson*, at 112. If a pat-down search is inconclusive and the officer feels an object which might be a weapon, he is entitled to withdraw it for examination, but once he has determined a suspect is not armed, the justification for the search ends and so does its legitimacy. *Hudson*, at 113. The *Dowling* rationale would "invite the use of weapons' searches as a pretext for unwarranted searches'". *Hudson*, at 113 (quoting *State v. Hobart*, 94 Wn.2d 437, 447, 617 P.2d 429 (1980)).

■ Mr. Fowler's jacket was in evidence. The trial judge examined it and described the pocket from which the LSD had been removed as a "large roomy outside pocket". The trooper knew the cigarette packages were not weapons. He had ample time and opportunity to retrieve the hard object without disturbing the others. With the hard object removed and Mr. Fowler thus relieved of his "armaments", the justification for a *Terry* frisk was at an end. During the course of a protective frisk, police may not intentionally seize items they know not to be weapons.

■ The State argues the LSD is nonetheless admissible under the plain view doctrine. It is common practice to distribute LSD on blotter paper. Upon withdrawing the three objects, Trooper McNinch immediately recognized the contents of the cigarette packages. Historically, plain view required the satisfaction of three elements: an officer is where he has a right to be, discovers an item inadvertently, and immediately recognizes it as evidence of a crime. *State v. Chrisman*, 100 Wn.2d 814, 819, 676 P.2d 419 (1984). The second prong has now been removed from the formula as a matter of federal constitutional law. *Hudson*, at 114 n.1 (citing *Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990)). Trooper McNinch testified the illumination from his headlights and emergency lights was sufficient to allow him to identify the LSD immediately upon withdrawing it from the jacket, or at least within a second thereafter. The trial court entered no formal findings in this regard, although the oral ruling indicates the judge was persuaded the contraband was immediately recognized as such. The first prong, however, is dispositive. If the officer was not where he had a right to be, plain view analysis is at an end. Trooper McNinch had a right to search for weapons and to remove them if found. He had no right to search for other items nor, if found, could he remove them without first obtaining a warrant.

Affirmed.

SWEENEY, A.C.J., and MUNSON, J., concur.

Review denied 126 Wn.2d 1009 (1995).