

**NUMBER 13-09-00445-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                                          **Appellant,**

**v.**

**TIMOTHY DIXON,**                                                          **Appellee.**

**On appeal from the 117th District Court
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, the State of Texas, appeals a trial court's granting of a motion to suppress filed by appellee, Timothy Dixon. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 2009) (providing that the State is entitled to appeal an order of a court in a criminal case if the order grants a motion to suppress evidence). By two issues, the State contends that the trial court erred in suppressing videos obtained from

a cell phone because Dixon failed to: (1) prove by competent evidence that he owned the phone; and (2) demonstrate that he did not abandon the cell phone. We affirm.

## I. BACKGROUND

This dispute centers on the propriety of searches of a cell phone, found in a department store, that yielded incriminating videos. David Herrera, a former employee of the Christus Spohn Health Systems, was shopping at the Corpus Christi Wholesale Mart with his sister when he noticed a black cell phone that resembled an Apple iPod laying on a pair of pants. Thinking it was an Apple iPod, Herrera took the cell phone and gave it to his sister, who put the cell phone in her pants pocket. Herrera and his sister then left the store to go home. Neither attempted to locate the owner of the cell phone, nor did they alert a store employee that someone had lost the cell phone.

When he arrived home, Herrera turned on the cell phone and attempted to see what music may be stored inside the phone. However, the battery in the cell phone was dead, so Herrera removed the SIM card and placed it in another cell phone. Herrera admitted at the hearing on Dixon's motion to suppress that when he took the cell phone from the store, he intended to deprive the owner of the property, he believed that the cell phone was an Apple iPod that contained music files in its memory, and he did not obtain consent from the cell phone's owner to use or search the cell phone.[1] Upon inserting the SIM card into another cell phone, Herrera noticed that several "different videos started popping up, just different videos on the little card." Herrera recalled that the videos depicted "individuals being beaten up" while in a hospital setting. Greg Shipley, a police officer with the Corpus Christi Police Department and a part-time security guard at the Christus Spohn Memorial Hospital, stated at the suppression hearing that there were three videos on the SIM card

---

[1] Herrera later acknowledged at the hearing on Dixon's motion to suppress that Dixon was the owner of the cell phone.

2

and described them as follows:

- Video 1: "In the first video[,] I saw what I believed at that point to be a hospital-type setting. I thought it was a maintenance-type worker or a janitor assaulting what was obviously a handicapped patient."

- Video 2: "The second video, I could hear people laughing in the background and an unknown person was taking what I believe to be shampoo or some sort of a liquid and dumping it on the heads of patients as they were sleeping."

- Video 3: Officer Shipley could not recall the contents of the third video.

After viewing the videos, Herrera showed the videos to his sister and his girlfriend, Linda Franco. Herrera's sister and Franco both wanted to turn the cell phone in to the local news station "because they wanted something to be done about it." Herrera first tried to take the cell phone to the local Channel 10 News Station, but they did not answer the door when Herrera arrived. Herrera then took the cell phone to David Frazier at the local Channel 6 News Station. Frazier kept the cell phone for "about two weeks," but asserted that he could not do anything with the cell phone "because the phone wasn't charged and they couldn't see the videos that were in there." Subsequently, Franco, an emergency room technician at the Christus Spohn Memorial Hospital, informed Officer Shipley, the security guard at the hospital, about the cell phone. While at the hospital several days later, Franco showed Officer Shipley the contents of the cell phone, including the three videos. Officer Shipley testified at the suppression hearing that Franco operated the phone while showing him the videos and that once she showed him the videos, he determined that a crime had been committed and confiscated the cell phone to preserve it as evidence. Officer Shipley further opined that the cell phone did not have any indentations or markings showing who really owned the cell phone.[2]

---

[2] Officer Shipley admitted on cross-examination that no warrant was obtained to search the cell phone and that Dixon did not consent to the search.

After reviewing the contents of the cell phone, police charged Dixon with four counts of injury to a disabled individual. *See* TEX. PENAL CODE ANN. § 22.04 (Vernon Supp. 2009). On June 29, 2009, Dixon filed a motion to suppress the evidence obtained from the cell phone as a product of an unlawful search. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). Dixon argued in his motion that he is the owner of the cell phone and that law enforcement "did not have a legally justifiable reason to search the cell phone because it was not abandoned property."

On July 6, 2009, the trial court conducted a hearing on Dixon's motion to suppress, and after hearing evidence and the arguments of both parties, the trial court granted Dixon's motion.[3] Thereafter, the trial court issued several findings of fact and conclusions of law. Specifically, the trial court, in its findings of fact, noted that:

> During the subsequent investigation, the cell phone account was determined to belong to one Alma De La Paz, mother of Elvira De La Paz, the common[-]law wife of Timothy Dixon . . . . Defendant Timothy Dixon and his voice were subsequently identified on the images from the cell phone. David Herrera confirmed that the cell phone everyone was talking about was later identified as belonging to Timothy Dixon. . . . It is without controversy that the cell phone belonged to Timothy Dixon even if the cell phone account was in the name of his common law mother-in-law.
>
> . . . .
>
> There was no evidence of abandonment presented during the Pretrial Hearing of July 6, 2009. David Herrera was never asked if he thought the cell phone had been abandoned.

Further, the trial court concluded that "Herrera, a private individual, illegally obtained evidence by the theft of Dixon's cell phone" and that article 38.23 of the code of criminal procedure mandated the exclusion of any evidence obtained from the cell phone at Dixon's trial. *See id.* The trial court also stated that Herrera admitted at the suppression hearing

---

[3] On July 24, 2009, the State moved the trial court to take judicial notice of evidence presented at a March 20, 2009 hearing that was conducted on a motion to reduce bond filed by Dixon in conjunction with his motion to suppress. The trial court, in its findings of fact and conclusions of law, repeatedly referenced evidence adduced at the March 20, 2009 hearing; thus, the trial court presumably granted the State's motion.

4

that "he intended to deprive Timothy Dixon of the property and had no intent to return the property or turn the property over to the police." With respect to the issue of abandonment, the trial court concluded that:

> Although property that has been abandoned cannot be the subject of theft, the Court of Criminal Appeals . . . held that abandonment depends on an intentional relinquishment[] by the abandoning party. Loss [sic] property is not the result of an intentional relinquishment. There was no evidence of abandonment presented at the Pretrial Hearing. David Herrera never stated that he thought he was taking property that had been abandoned. Instead, Herrera admitted to stealing the cell phone when he stated that he intended to deprive Timothy Dixon of the property and had no intent to return the property or turn the property over to the police.

The trial court certified the State's right to appeal, and this appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.* at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When a trial judge makes explicit fact findings regarding a motion to suppress, an

5

"appellate court [must first] determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Kelly*, 204 S.W.3d at 818. "The appellate court then reviews the trial court's legal ruling[s] de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.*

### III. APPLICABLE LAW

Both the Bill of Rights of the United States Constitution and the Texas Constitution declare that people shall be secure in their persons and possessions from unreasonable searches or seizures. *See* U.S. CONST. amend IV; TEX. CONST. art. 9, § 1; *see also Flores v. State*, 824 S.W.2d 704, 705 (Tex. App.–Corpus Christi 1992, pet. ref'd). The Texas exclusionary statute, article 38.23(a) of the code of criminal procedure, states that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or law of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *see Miles v. State*, 241 S.W.3d 28, 32 (Tex. Crim. App. 2007). The court of criminal appeals has stated that "[t]he Texas exclusionary rule applies to illegal searches and seizures conducted by law enforcement officers or 'other persons,' even when those other persons are not acting in conjunction with, or at the request of, government officials." *Miles*, 241 S.W.3d at 36; *see State v. Johnson*, 939 S.W.2d 586, 587-88 (Tex. Crim. App. 1996) (en banc) ("[W]e must take it [article 38.23] to mean only what it says: that evidence illegally obtained by an 'officer or other person' ought to be suppressed."). Furthermore, "[o]nly those acts which violate privacy rights or property interests are subject to the state . . . exclusionary rule." *Miles*, 241 S.W.3d at 36 n.33 (citing *Chavez v. State*, 9 S.W.3d 817, 822-23 (Tex. Crim. App. 2000) (Price, J., concurring)).

6

## IV. STANDING AND PRIVACY

In its first issue, the State contends that the trial court abused its discretion in granting Dixon's motion to suppress because Dixon failed to establish that he was the owner of the cell phone and that "proof of ownership was necessary both to show that Dixon had standing to challenge the search and to prove a theft of the phone." Dixon asserts that the evidence adduced at trial demonstrated that he was the owner of the cell phone, and thus, he had standing to challenge the search of the cell phone and to prove that Herrera stole the cell phone. In its second issue, the State argues that the trial court abused its discretion by granting Dixon's motion to suppress because Dixon failed to inform the police or put others on notice that he was the owner of the cell phone. Specifically, the State alleges that the cell phone was abandoned and that Dixon does not have a privacy interest in the cell phone. Dixon counters by arguing that the evidence does not indicate that he intended to abandon the cell phone and, because Herrera unlawfully stole the cell phone, the police were precluded from searching the cell phone.[4]

### A.    Ownership of the Cell Phone

"Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). Moreover, "the State may raise the issue of standing for the first time on appeal, even when the defendant is the prevailing party in the trial court." *Id.* at 60 (citing *State v. Brady*, 763 S.W.2d 38, 42 (Tex. App.–Corpus Christi 1988, no pet.)).

An individual has standing to complain about an illegal search and seizure if the individual is a wronged or injured party. *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim.

---

[4] Because both of the State's issues center on whether Dixon had a property interest in the cell phone and was therefore entitled to privacy from unreasonable searches and seizures, we address both issues together.

App. 1992) (en banc). In *Fuller*, the court of criminal appeals concluded that, within the context of article 38.23, only the wronged or injured party, not third parties, may challenge an illegal search and seizure. *Id.* Recently, the court of criminal appeals held that "a defendant seeking to suppress evidence obtained during a search always has the burden of proving standing to complain of the search." *Handy v. State*, 189 S.W.3d 299 n.2 (Tex. Crim. App. 2006).

Dixon argues that he has standing to challenge the search of the cell phone because he "alleged [that] he was a victim of an illegal search or seizure and has a property right in the cell phone in question" and the State did not dispute his claim of standing. In making this argument, Dixon relies on the court of criminal appeals' decision in *Russell v. State*, wherein the court stated that "[a] mere allegation by a defendant that he was a victim of an illegal search or seizure, if not disputed by the State, is sufficient to establish standing to challenge a search or seizure." 717 S.W.2d 7, 9 n.6 (Tex. Crim. App. 1986). However, the *Handy* court explicitly rejected the *Russell* court's analysis of standing as it applied to illegal searches and seizures. *Handy*, 189 S.W.3d at 299 n.*2.* Therefore, a defendant challenging the legality of a search has the burden of proving that he "personally had a reasonable expectation of privacy in the premises that were searched." *Id.* at 299 (citing *Kothe*, 152 S.W.3d at 59 (analyzing standing under the Fourth Amendment of the United States Constitution); *Richardson v. State*, 865 S.W.2d 944, 948-49 (Tex. Crim. App. 1993) (analyzing standing under article I, section 9 of the Texas Constitution)); *see Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) ("An accused has standing, under both constitutional provisions [the Fourth Amendment of the United States Constitution and article 1, section 9 of the Texas Constitution], to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate

8

expectation of privacy in the place invaded. Furthermore, the accused, because he has greater access to the relevant evidence, has the burden of proving facts establishing a legitimate expectation of privacy." (citations omitted)). The court of criminal appeals has also noted, within the context of the Fourth Amendment, that:

> Proof of "a reasonable expectation of privacy" is at the forefront of all Fourth Amendment claims. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. He must prove that he was a "victim" of the unlawful search or seizure. He has no standing to complain about the invasion of someone else's personal rights. Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation.

*Kothe*, 152 S.W.3d at 59.

"The litmus for determining the existence of a legitimate expectation of privacy as to a particular accused is twofold: first, did he exhibit by his conduct an actual (subjective) expectation of privacy[;] and second, if he did, was that subjective expectation, one that society is prepared to recognize as reasonable" *Chapa v. State*, 729 S.W.2d 723, 727 (Tex. Crim. App. 1987) (internal quotations omitted); *see Smith v. Maryland*, 442 U.S. 735, 740 (1979). In other words, the appropriate inquiry is whether Dixon expected that the contents of his cell phone would be free from governmental intrusion, and if he did, is that expectation one that society is prepared to recognize as reasonable. *See Chapa*, 729 S.W.2d at 727; *see also Richardson*, 865 S.W.2d at 948-49. Several factors are relevant in determining whether a given claim of privacy is objectively reasonable, including: (1) "whether the accused had a property or possessory interest in the place invaded"; (2) "whether he was legitimately in the place invaded"; (3) "whether he had complete dominion or control and the right to exclude others"; (4) "whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy"; (5) "whether he put the place to some private use"; and (6) "whether his claim of privacy is consistent with historical

9

notions of privacy." *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). "This list of factors is not exhaustive, however, and none is dispositive of a particular assertion of privacy; rather, we examine the circumstances surrounding the search in their totality." *Id.*

Here, the State argues that Dixon did not prove that the cell phone that was searched and seized was his. As noted above, the trial court, in its findings of fact, explicitly stated that, "[i]t is without controversy that the cell phone belonged to Timothy Dixon even if the cell phone account was in the name of his common law mother-in-law." Here, Dixon clearly stated in his motion to suppress that the cell phone was his and asserted that the phone had been the subject of an unlawful search and seizure. Moreover, Dixon directs us to Herrera's testimony, wherein Herrera, on cross-examination, admitted several times that the cell phone belonged to Dixon. Thus, the record contains some evidence that Dixon was the owner of the cell phone and had the right to exclude others and that Herrera was not the owner. *See* TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon 2003) (defining "owner" as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor . . ."); *see also Granados*, 85 S.W.3d at 223.

Additionally, in *Chapa*, the court of criminal appeals noted that:

> Whether a particular expectation of privacy is one society is willing to recognize [as reasonable] is in the nature of a legal rather than a factual inquiry. All that is necessary to be proven as a factual matter is the particular context in which [the defendant] harbored that expectation. It is then left to be resolved as a matter of law whether in the context shown society is willing to sanction that expectation as reasonable.

*Chapa v. State*, 729 S.W.2d 723, 728 n.3 (Tex. Crim. App. 1987); *see Villarreal v.* State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) ("Denominating the question [of a

10

defendant's expectation of privacy] as one of law is sensible, because an appellate court is in a better position to decide it correctly than is a trial court."). In his motion to suppress, Dixon argued that the evidence obtained from the cell phone should be excluded from the trial in this matter because Officer Shipley and Herrera searched the phone without Dixon's consent or a warrant and that there was no "legally justifiable reason to search the cell phone because it was not abandoned property," which suggests that Dixon harbored an expectation that the contents of his cell phone would be free from intrusive searches conducted by governmental officials or others. *See Villarreal*, 935 S.W.2d at 138; *see also Chapa*, 729 S.W.2d at 728 n.3. We believe that Dixon's expectation of privacy in the cell phone is reasonable given the circumstances of this case. *See Villarreal*, 935 S.W.2d at 138; *Chapa*, 729 S.W.2d at 727, 728 n.3; *see also Granados*, 85 S.W.3d at 223; *Lemons v. State*, 298 S.W.3d 658, 662 (Tex. App.–Tyler 2009, pet. ref'd) ("[A] person has a privacy interest in information contained in a cellular phone.") (citing *United States v. Finley*, 477 F.3d 250, 259-60 (5th Cir. 2007)).

## B. Abandonment

In any event, the State asserts that even if Dixon had an ownership interest in the cell phone, he forfeited this interest and, thus, did not have standing in this matter because the cell phone was abandoned. Regarding abandonment, the court of criminal appeals has stated that:

> Abandonment of property occurs if the defendant intended to abandon the property and his decision to abandon it was not due to police misconduct. When police take possession of property abandoned independent of police misconduct[,] there is no seizure under the Fourth Amendment. This Court has spoken approvingly of language, in *U.S. v. Colbert*, 474 F.2d 174 (5th Cir. 1973) (en banc), which discussed how abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances, with the issue not being in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property

11

> so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997) (en banc) (internal citations omitted); *see Franklin v. State*, 913 S.W.2d 234, 240 (Tex. App.–Beaumont 1995, pet. ref'd) (stating that "[f]or abandonment to occur, however, a defendant must (1) intend to abandon the property, and (2) freely decide to abandon the property" and holding that "any alleged abandonment after the search, whether appellant actually knew of the search or not at the time of his disavowal [of ownership], does not validate the prior illegal search"); *see also Smith v. State*, No. 11-06-00274-CR, 2008 Tex. App. LEXIS 3199, at *6 (Tex. App.–Eastland May 1, 2008, no pet.) (mem. op., not designated for publication) ("When a defendant abandons property intentionally, and not due to police misconduct, no Fourth Amendment seizure occurs if police take possession of the property; and the defendant lacks standing to contest the reasonableness of their search of the property."). An intent to abandon is clearly expressed when a defendant states that he neither owns an item nor knows who the true owner is. *See State v. Grant*, 832 S.W.2d 624, 627 (Tex. App.–Houston [14th Dist.] 1992, pet. ref'd); *see also Perlmutter v. State*, No. 14-96-00780-CR, 1998 Tex. App. LEXIS 4144, at **11-12 (Tex. App.–Houston [14th Dist.] July 9, 1998, no pet.) (not designated for publication). Moreover, in such a case, a defendant has no legitimate expectation of privacy in the disclaimed item. *See Grant*, 832 S.W.2d at 627; *see also Perlmutter*, 1998 Tex. App. LEXIS 4144, at *12.

In this case, however, we are presented with a set of facts involving the search of the cell phone without the owner's consent and without a clear expression of abandonment that was preceded by an unlawful act—theft—of a third person, Herrera. In *Miles*, the court of criminal appeals documented fact scenarios similar to the present case and stated that:

> [In *Cobb v. State*, 85 S.W.3d 258 (Tex. Crim. App. 2002), the] Court held

that five knives that the defendant's father took from the defendant's apartment were not inadmissible under Article 38.23. The father was legitimately in the apartment at the request of the defendant's live-in girlfriend to retrieve her car keys and he took the knives, not with the intent to steal them, but to give them to the police. The defendant's father thought that the knives were connected to the capital murder investigation of his son. Thus, he did not take the knives with the "intent to deprive" the owner (his son and his son's girlfriend) of them.

*Miles*, 241 S.W.3d at 38 (internal citations and footnotes omitted). The *Miles* Court further stated that:

Conversely, in *State v. Johnson*, [939 S.W.2d 586 (Tex. Crim. App. 1996)] this Court held that evidence seized by the decedent's sons who purportedly "burglarized" the funeral home jointly operated by the defendant and the decedent was inadmissible under Article 38.23. Neither they nor police officers had permission to enter the funeral home. Thus, neither an officer nor the citizens were legitimately in the funeral home, and neither could make a warrantless seizure of those items. What the police could not do, the decedent's sons could not do either. Similarly, in *Jenschke v. State*, [147 S.W.3d 398 (Tex. Crim. App. 2004)] we held that the parents of a child (who had said that the defendant sexually assaulted her) acted illegally when they broke into the defendant's truck and took a used condom from inside it without the intent to immediately turn it over to the police. An officer, standing in the parents' shoes, could not have entered the defendant's garage, found the key to the truck, unlocked it, and made a warrantless search of that truck without permission or other exigent circumstances. Thus, neither could the citizens.

*Id.* (internal citations and footnotes omitted). The *Miles* Court then held that "a private person can do what a police officer standing in his shoes can legitimately do, but cannot do what a police officer cannot do . . . " and noted that the Texas exclusionary rule does not authorize unlawful conduct by "another person." *Id.*

The trial court, in its findings of fact, stated that, "[t]here was no evidence of abandonment presented during the Pretrial Hearing of July 6, 2009. David Herrera was never asked if he thought the cell phone has been abandoned." As noted earlier, Herrera testified that the cell phone belonged to Dixon and that he took the cell phone from the store with the intent to deprive Dixon of its use. Thus, Herrera's actions constituted an

13

unlawful theft of Dixon's cell phone.  *See* TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009) (providing that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property").  Herrera testified that he did not intend to give the cell phone to police when he took it from the department store.  *But see Jenschke*, 147 S.W.3d at 402 (holding that "when a person who is not an officer or an agent of an officer takes property that is evidence of crime, without the effective consent of the owner and with the intent to turn over the property to an officer, the conduct may be non-criminal even though the person has intent to deprive the owner").  Further, as noted in the trial court's findings of fact and conclusions of law, Herrera failed to mention that the cell phone had been abandoned.  Essentially, the searches of Dixon's cell phone by Herrera and police flowed from Herrera's unlawful theft of the cell phone from the department store.

Moreover, it is noteworthy that the incriminating videos were only visible when conducting an intrusive search of the cell phone, and there is no testimony that Herrera, acting in the shoes of law enforcement, had probable cause to conduct a warrantless search of the cell phone at the time the phone was found in the department store.  *See Carroll v. United States*, 267 U.S. 132, 156 (1925) (holding that law enforcement cannot conduct warrantless searches of property unless probable cause is shown) (citing *United States v. Kaplan*, 286 F. 963, 972 (S.D. Ga. 1923)); *see also Katz v. United States*, 389 U.S. 347, 357 (1967) (same).  Because "a private person can do what a police officer standing in his shoes can legitimately do but cannot do what a police officer cannot do," we hold that Herrera's unlawful theft of Dixon's cell phone would have constituted misconduct if Herrera had been a police officer and, therefore, precludes a finding that Dixon abandoned the cell phone.  *See Miles*, 241 S.W.3d at 38; *see also McDuff*, 939

14

S.W.2d at 616-17.[5]

The State attempts to argue that the searches of the cell phone by Herrera and the police were justified because Dixon made no attempt to reclaim the cell phone by speaking with the police or contacting representatives of the store where the cell phone was taken by Herrera, even though Dixon had not been in possession of the cell phone for more than three weeks. However, as noted above, "any alleged abandonment after the search, whether appellant actually knew of the search or not at the time of his disavowal [of ownership], does not validate the prior illegal search." *Franklin*, 913 S.W.2d at 240. In other words, the fact that the record does not reveal that Dixon made efforts to reclaim his cell phone cannot be used to validate the prior illegal searches conducted by Herrera and the police. *See id.*

Based on the foregoing, we conclude that Dixon had a privacy right in his cell phone and, therefore, had standing to challenge the searches of his cell phone. *See Handy*, 189 S.W.3d at 299; *Kothe*, 152 S.W.3d at 59; *Fuller*, 829 S.W.2d at 202. We further conclude that Herrera's unlawful theft and subsequent search of the phone required that the evidence obtained from the cell phone be suppressed in accordance with article 38.23 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23; *see also Miles*, 241 S.W.3d at 38; *Jenschke*, 147 S.W.3d at 403; *Johnson*, 939 S.W.2d at 587-88. We therefore hold that the trial court did not abuse its discretion in granting Dixon's motion to suppress. *See Dixon*, 206 S.W.3d at 590; *see also Guzman*, 955 S.W.2d at 88-89.

---

[5] The *McDuff* court, in addressing a situation involving an allegedly abandoned car, noted that "leaving a car unattended . . . does not automatically mean 'abandonment' in terms of a Fourth Amendment privacy interest. Each situation must be analyzed and evaluated on a case-by-case basis, with the particular facts of each situation determinative." *McDuff v. State*, 939 S.W.2d 607, 617 (Tex. Crim. App. 1997). Here, we cannot say that Dixon abandoned the cell phone prior to the theft because there is no evidence indicating an intent to abandon. Moreover, the State's abandonment argument depends upon the time that had elapsed from Herrera's theft of the cell phone to the police's seizure the phone, and Dixon's failure to inquire about the whereabouts of the phone during this time period. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005); *see also McDuff*, 939 S.W.2d at 617.

Accordingly, we overrule both of the State's issues.

## V. CONCLUSION

Having overruled both of the State's issues, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
27th day of August, 2010.