146 P.3d 1227 (2006)
STATE of Washington, Respondent,
v.
Kris Alan HORTON, Appellant.
No. 24381-8-III.
Court of Appeals of Washington, Division 3.
November 16, 2006.
*1228 Terry Jay Bloor, Benton County Prosecutors Office, Kennewick, WA, for Respondent.
Janet G. Gemberling, Gemberling & Dooris PS, Spokane, WA, for Appellant.
SWEENEY, C.J.
¶ 1 A Terry[1] frisk is a well-recognized exception to the usual requirement of probable cause and a search warrant. But the scope of a Terry frisk is limited to objects that might be used as weapons. We conclude that this does not include a cigarette pack. And we therefore hold that Kris Alan Horton's lawyer was ineffective for failing to move to suppress the drug evidence supporting Mr. Horton's conviction for possession with intent to manufacture and simple possession of methamphetamine. We therefore reverse his convictions for those charges.

FACTS
¶ 2 A sheriff's deputy was patrolling a remote area near Kennewick, Washington, after midnight on a February night. He saw a car travel at 10 to 15 miles per hour in a 50-mile-per-hour zone and drifting over the center line. He stopped the car and approached. A woman was driving, and the appellant, Kris A. Horton, was the passenger.
¶ 3 The deputy approached the car with his flashlight. He could see into the back seat. He saw a five-gallon container, a can of liquid butane, two bottles of Drano, and several lithium batteries. He recognized these as items commonly used in the manufacture of methamphetamine. The deputy immediately switched his focus from bad driving to controlled substances violations.
¶ 4 The driver appeared dazed and seemed to drift off while the deputy was talking to her. The deputy arrested her and obtained a warrant by telephone to search the car. In addition to the items in plain view, this search would produce a slab of dry ice, mineral oil, a hydrochloric acid generator, aluminum foil, butane fluid, and a heat source.
¶ 5 The deputy ordered Mr. Horton out of the car and patted him down before calling in his request for a warrant. The deputy later testified at trial that he was searching Mr. Horton for evidence of illegal activity as well as for weapons.
*1229 ¶ 6 The deputy found an open cigarette pack in Mr. Horton's jacket pocket. He searched inside the cigarette pack and found a small baggie of white powder. This field tested positive for methamphetamine. The deputy arrested Mr. Horton for possession and continued to search incident to the arrest. He found a pill bottle in another pocket of the jacket. The white powder in the bottle field-tested positive for ephedrine. The State crime lab confirmed these field results. Mr. Horton was also carrying a digital scale.
¶ 7 The State filed an information charging Mr. Horton with one count of possession of ephedrine with intent to manufacture and one count of simple possession of methamphetamine. In a brief introduction, the information summarizes count one as possession of ephedrine with "intent"  period. Clerk's Papers at 92. An amended information substitutes "intent to manufacture methamphetamine" for "intent" in the introduction. But the charges were not changed; they remained two counts of simple possession.
¶ 8 Everyone then proceeded as if a manufacturing count had been charged. In its brief to this court, the State says it filed an amended information adding manufacturing. But the superior court files contain no such information. Throughout the testimony and in closing argument, the prosecutor referred to a charge of manufacturing methamphetamine and asked the jury to find Mr. Horton guilty of it. The judge instructed the jury that Mr. Horton was charged with manufacturing and gave them instructions for manufacturing. The State told the jury in closing argument that Mr. Horton was charged with manufacturing methamphetamine and that the elements instruction for manufacturing was "one of the key instructions." Report of Proceedings (June 7, 2005) (RP) at 104-05.
¶ 9 The driver had earlier pleaded guilty to the same possession charges filed against Mr. Horton. At Mr. Horton's trial, she admitted she was preparing to manufacture methamphetamine. She testified that Mr. Horton was not involved. The prosecutor mistakenly believed that the driver was convicted of manufacturing and questioned her about a "manufacturing conviction." She explained that she was guilty solely of possession and possession with intent. In arguing that Mr. Horton was an accomplice to manufacturing, however, the State referred to the driver's convictions as "participating in the manufacture of methamphetamine." RP at 85-86, 97.
¶ 10 Defense counsel did not object.
¶ 11 The judge defined manufacturing for the jury, gave an elements instruction for manufacturing, and issued a verdict form for manufacturing. The jury was instructed that possession of ephedrine with intent to manufacture was an alternative crime to manufacturing. The court also instructed the jury on accomplice liability; the State told the jury this related to the manufacturing charge. The State argued that Mr. Horton was guilty of manufacturing either by planning to manufacture or by aiding the driver in her plan to manufacture methamphetamine that night.
¶ 12 The jury filled out the manufacturing verdict form with a verdict of "not guilty." But they found Mr. Horton guilty of the "alternative" charges of possession with intent to manufacture and simple possession of methamphetamine.
¶ 13 Mr. Horton's defense to the possession charges was unwitting possession. He claimed the driver loaned him the jacket and that he was unaware of the drugs found in the pockets.
¶ 14 The jury "acquitted" Mr. Horton of manufacturing. It convicted him of the two counts of possession.

DISCUSSION
TERRY FRISK
¶ 15 Mr. Horton contends the search of his person exceeded the lawful scope of a Terry weapons frisk. He raises the issue for the first time on appeal by claiming the manifest constitutional error of ineffective assistance of counsel. His trial counsel moved to suppress solely on the unsuccessful ground that the stop was pretextual.
¶ 16 Mr. Horton contends that minimally effective counsel would have challenged the scope of the Terry weapons frisk. He contends a weapons search was not justified at *1230 its inception, because the officer had no reason to suppose Mr. Horton was armed and dangerous. And, even if a weapons search was justified, removing the cigarette package from his pocket and looking inside it exceeded the lawful scope of a Terry frisk. This is because nothing in the deputy's written report or testimony suggests an objectively reasonable concern for officer safety.
¶ 17 The State responds that defense counsel did not challenge the Terry search because there was nothing wrong with the search. It urges us to uphold any field officer's decision to frisk for weapons, so long as the search is not arbitrary or harassing. State v. Belieu, 112 Wash.2d 587, 773 P.2d 46 (1989). The State points out that the officer stopped this car on a dark road in a rural area after midnight and immediately observed evidence of a serious crime. The driver appeared intoxicated. The passenger was wearing two coats that could easily conceal a weapon. The State contends this gave the officer an objectively reasonable basis for a weapons frisk as part of lawfully securing the scene.
¶ 18 We do not ordinarily consider evidentiary objections that were not presented to the trial court. RAP 2.5(a)(3); State v. Mendoza-Solorio, 108 Wash.App. 823, 834, 33 P.3d 411 (2001). We make an exception, however, if the appellant demonstrates manifest error that affects a constitutional right. RAP 2.5(a)(3); Mendoza-Solorio, 108 Wash. App. at 834, 33 P.3d 411. The right to effective counsel in criminal proceedings is a constitutional right. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 19 We review a claim of ineffective assistance de novo. State v. Rainey, 107 Wash.App. 129, 135, 28 P.3d 10 (2001). The appellant must show both that counsel's performance was defective and that the error changed the outcome of the trial. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
¶ 20 Suppressing drug evidence often results in dismissal of drug possession charges. So both Strickland prongs will be satisfied if counsel fails to seek suppression where the record suggests that a motion likely would have succeeded. State v. McFarland, 127 Wash.2d 322, 333-34, 899 P.2d 1251 (1995). To determine whether counsel was ineffective, therefore, we look at the record and assess the chances that a suppression motion would have succeeded. Id.
¶ 21 Washington Constitution article I, section 7 prohibits unreasonable searches and seizures. Evidence seized in violation of article I, section 7 is inadmissible at trial. State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999). Any warrantless search is presumed unreasonable absent proof that one of the few well-established exceptions to the warrant requirement applies. State v. Smith, 113 Wash.App. 846, 853, 55 P.3d 686 (2002); State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996).
¶ 22 We distinguish between searching an automobile passenger incident solely to the arrest of the driver, and searching the passenger based on independent grounds arising from the passenger's own suspected illegal activity. State v. Horrace, 144 Wash.2d 386, 392, 28 P.3d 753 (2001) (citing State v. Parker, 139 Wash.2d 486, 502-03, 987 P.2d 73 (1999)). The arrest of the driver of a vehicle does not, without more, provide the legal authority to search passengers without a warrant. Horrace, 144 Wash.2d at 392, 28 P.3d 753. The operative phrase here is "without more."
¶ 23 A reasonable concern for officer safety is a sufficient independent ground to pat down a passenger. Id. (citing State v. Kennedy, 107 Wash.2d 1, 11, 726 P.2d 445 (1986) (an officer conducting an investigative stop may be endangered by the suspect's companions)). Terry uses the term "armed and presently dangerous." Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Horrace, 144 Wash.2d at 394, 28 P.3d 753. But the officer need not be convinced the person is in fact armed and dangerous; it is sufficient that he or she can "`articulate an objective rationale'" to support a frisk. Parker, 139 Wash.2d at 496, 987 P.2d 73 (quoting State v. Mendez, 137 Wash.2d 208, 220, 970 P.2d 722 (1999)). The officer must be able to point to particular facts from which we can *1231 reasonably infer legitimate safety concerns. State v. Broadnax, 98 Wash.2d 289, 294, 654 P.2d 96 (1982). The rationale must be based on the particular circumstances at the scene. Mendez, 137 Wash.2d 208, 970 P.2d 722.
¶ 24 This investigation ceased to be a traffic stop before the deputy patted down Mr. Horton. The deputy saw physical evidence of a mobile methamphetamine lab as soon as he approached the car. This was more than sufficient articulable grounds for an investigative stop. It amounted to probable cause to arrest both occupants of the car. The deputy was justified in securing the scene by patting both suspects down for weapons. Horrace, 144 Wash.2d at 394, 28 P.3d 753.
¶ 25 But, Mr. Horton contends, a Terry weapons frisk means no more than a light pat-down of outer clothing for items that feel like they could be weapons. Here, the deputy removed a cigarette pack and looked inside. The State responds that a cigarette pack could contain razor blades or other small objects that conceivably could be used as weapons. The State argues that Terry permits a search thorough enough to find concealed blades, stick pins, and bent paper clips.
¶ 26 Incident to a Terry investigative stop, an officer may perform a superficial pat down of the outer clothing for weapons, if the particular circumstances present grounds for concern for officer safety. The protective search must be justified in scope throughout the duration of the search. State v. Fowler, 76 Wash.App. 168, 172, 883 P.2d 338 (1994) (citing State v. Hudson, 124 Wash.2d 107, 112, 874 P.2d 160 (1994)).
¶ 27 The officer may withdraw an object if it feels like it might be a weapon. Id. But if the officer withdraws a cigarette pack under this rationale, the justification for the intrusion ends once he determines it is not a weapon. Id. at 172-73, 883 P.2d 338. The court reached the same conclusion in State v. Allen, where the contents of a wallet were suppressed. State v. Allen, 93 Wash.2d 170, 172, 606 P.2d 1235 (1980); see also Broadnax, 98 Wash.2d at 297, 654 P.2d 96.
¶ 28 If we accept the State's argument, the scope of a Terry frisk is essentially unlimited, since the tiniest object can conceivably be used offensively. We find no authority for this proposition. And the State directs us to none. Only objects that feel like they could be used as weapons in a superficial pat down of the outer clothing may be removed and examined under Terry.
¶ 29 Nothing in the particular circumstances here suggested that Mr. Horton's weapon of choice was likely to be a razor blade or paper clip. And the deputy could certainly have protected himself (the object of a Terry search) from miniature weapons by tossing the pack out of reach.
¶ 30 Significantly, the deputy testified that he routinely searches people for contraband as well as weapons: "You're going to search them for weapons and along with other things that may be harmful or that may be illegal." RP at 10. This, of course, is not the legitimate scope of a Terry frisk. State v. Day, 130 Wash.App. 622, 626, 124 P.3d 335 (2005), review granted, 158 Wash.2d 1009, 143 P.3d 830 (2006). The inside of the cigarette pack was, then, beyond the lawful scope of Terry.
¶ 31 The State argues that the deputy here did not proceed under articulable suspicion or Terry. The deputy had probable cause to believe Mr. Horton was manufacturing methamphetamine and to arrest him immediately based on the mobile lab in the back seat. And probable cause trumps articulable suspicion. Therefore, the Terry scope limitations did not apply. State v. O'Neill, 148 Wash.2d 564, 582, 62 P.3d 489 (2003). See, e.g., Kennedy, 107 Wash.2d at 17, 726 P.2d 445.
¶ 32 But probable cause to arrest was not enough to justify a search incident to arrest. O'Neill, 148 Wash.2d at 587, 62 P.3d 489. An actual arrest must precede a search incident to an arrest. Id.
¶ 33 Here, the deputy had as much probable cause to arrest Mr. Horton as he did to arrest the driver, based on the methamphetamine manufacturing gear in plain view. But the deputy did not arrest Mr. Horton. Instead, he arrested the driver and then telephoned for a vehicle warrant. He thought he could search Mr. Horton for evidence without either an arrest or a search *1232 warrant, based solely on probable cause. He could not. Id. The intrusion was not lawful as a search incident to arrest, because the search of the cigarette pack was conducted before Mr. Horton was arrested.
¶ 34 We therefore hold that defense counsel's failure to move to suppress the evidence discovered in the defective search was both erroneous and prejudicial. And we reverse the conviction.
WE CONCUR: BROWN and KATO, JJ.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).