[No. 25969-2-III.    Division Three.    April 17, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. JENNIFER L. ADAMS, *Appellant*.

*Janet G. Gemberling* (of *Gemberling & Dooris, PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Andrew J. Metts III, Deputy*, for respondent.

¶1 SWEENEY, J. — One of the "jealously guarded" exceptions to the general requirement of a search warrant is the protective frisk. In *State v. Horrace,*[1] our state Supreme Court ruled that following the arrest of a driver, a passenger may be frisked if an officer has specific, articulable facts

---

[1] *State v. Horrace,* 144 Wn.2d 386, 28 P.3d 753 (2001).

supporting a reasonable belief that the passenger may be armed and dangerous. Here, a passenger in a stolen car was frisked for merely being in the car at the time of the stop. The question is whether the officer had reasonable, articulable facts that led him to believe that the passenger was armed and/or dangerous before the frisk. We conclude that he did not. And the trial court made no such finding. We, accordingly, reverse the court's decision denying the passenger's motion to suppress the drug evidence. And we reverse the conviction for possession of a controlled substance, methamphetamine.

## FACTS

¶2 Police Officer Jake Jensen stopped a car because the car had been reported stolen. Jennifer Adams was a passenger in the stolen car. He detained the driver and the passenger to investigate. Officer Jensen handcuffed Ms. Adams. Officer Jensen was alone. Officer Michael McCasland responded later to assist Officer Jensen.

¶3 Officer McCasland told Ms. Adams that he was going to pat her down for weapons. Clerk's Papers (CP) at 79. He asked if she had anything on her that would poke him. She responded there was a syringe in her coat pocket. Officer Jensen asked if he could remove the syringe. Ms. Adams responded that he could.

¶4 There is no finding by the trial judge here that Ms. Adams "hesitated" in getting out of the car. There is no finding by the trial judge that she "refused" to lie down when ordered. There is no finding that she was taken down. And there is no finding that the officer was "trying to control two subjects." CP at 78-80.

¶5 Again, Officer McCasland reached into the pocket and saw a syringe along with a plastic bag containing a white crystal substance. He recognized the substance as methamphetamine and seized the syringe and the bag.

¶6 The police arrested Ms. Adams. The State charged her with possession of methamphetamine. She moved to

suppress the drug evidence. The court denied her motion. And a judge found Ms. Adams guilty of possession of a controlled substance, methamphetamine.

## DISCUSSION

¶7 Ms. Adams challenges the officer's authority to search her. She argues that there was nothing here to support his concerns for safety. Therefore, the officer was without authority to search her.

¶8 The essential facts here are undisputed. And so the only question before us is whether they support the trial court's conclusion that the search of the passenger was justified. That is a question of law and so our review is de novo. *State v. Johnson,* 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

¶9 As a general rule, warrantless searches and seizures are per se unreasonable. *State v. Ladson,* 138 Wn.2d 343, 350-51, 979 P.2d 833 (1999). The courts have, however, recognized a number of narrow exceptions that allow the police to conduct searches and seizures without a warrant. *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Crane,* 105 Wn. App. 301, 312, 19 P.3d 1100 (2001), *overruled on other grounds by State v. O'Neill,* 148 Wn.2d 564, 62 P.3d 489 (2003).

¶10 One such exception allows officers to briefly detain a person when they have a reasonable suspicion that the person has committed or is about to commit a crime or is a safety threat. *Terry,* 392 U.S. at 21; *Crane,* 105 Wn. App. at 312. But even such a brief detention must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21.

¶11 In *Terry,* the Supreme Court acknowledged that there is " 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' "

*Id.* at 21 (alterations in original) (quoting *Camara v. Mun. Court,* 387 U.S. 523, 536-37, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)). This is a case-by-case inquiry in which we evaluate the totality of the circumstances presented to the officer, including the nature of the crime being investigated. *State v. Glover,* 116 Wn.2d 509, 514, 806 P.2d 760 (1991).

¶12 Where an officer's conduct is connected to safety concerns rather than investigatory goals, we are particularly reluctant to substitute our own judgment for that of the officer. *State v. Collins,* 121 Wn.2d 168, 173, 847 P.2d 919 (1993). A frisk for weapons is permissible if (1) the initial stop is legitimate, (2) a reasonable safety concern exists to justify the frisk, and (3) the scope of the frisk is limited to the protective purpose. *Id.*

¶13 Washington courts have held that a reasonable concern for officer safety justifies a protective frisk in a number of factual circumstances. *Horrace,* 144 Wn.2d at 393-96; *State v. Parker,* 139 Wn.2d 486, 501-04, 987 P.2d 73 (1999); *State v. Laskowski,* 88 Wn. App. 858, 860, 950 P.2d 950 (1997). One such situation is where, as here, police legitimately contact a suspect and incidentally come into contact with the suspect's companion or vehicle passenger and the conduct of the passenger justifies the frisk. *Horrace,* 144 Wn.2d at 395-96 (vehicle passenger properly frisked based on furtive movements by driver); *State v. Kennedy,* 107 Wn.2d 1, 726 P.2d 445 (1986). In *Laskowski,* the search was justified: " '[a]ny reasonable basis supporting an inference that the investigatee *or a companion* is armed will justify a protective search for weapons.' " *Laskowski,* 88 Wn. App. at 860 (emphasis added) (alteration in original) (quoting *State v. Wilkinson,* 56 Wn. App. 812, 818, 785 P.2d 1139 (1990)).

¶14 Here, the officer legitimately came in contact with the driver because the car was reported stolen. He incidentally came into contact with Ms. Adams, the passenger in the car. *See Horrace,* 144 Wn.2d at 396; *Laskowski,* 88 Wn. App. at 860.

¶15 The remaining question then is whether the officer had reasonable, articulable safety concerns before the frisk that would have justified it. *Collins,* 121 Wn.2d at 173; *Horrace,* 144 Wn.2d at 389. Here, the trial court found that Ms. Adams was a passenger in a stolen car. CP at 78 (Finding of Fact 1). Officer Jensen stopped the car. *Id.* Two people were in the car, while Officer Jensen was alone. *Id.* The trial court also found that Officer Jensen told Ms. Adams that she was being detained during the investigation of the stolen car. *Id.* Officer McCasland responded to assist Officer Jensen. CP at 79 (Finding of Fact 2).

¶16 Officer McCasland told Ms. Adams that he was going to pat her down for weapons. *Id.* After that he asked her if she had anything that might poke him. *Id.* She told him that she had a syringe in her coat pocket. *Id.*

¶17 But the protective frisk of a passenger in a car under *Terry* requires that "the officer is able to point to specific, articulable facts giving rise to an objectively reasonable belief that the passenger could be armed and dangerous." *Horrace,* 144 Wn.2d at 399-400.

¶18 In *Horrace,* a police officer arrested a car's driver for driving on a suspended license with outstanding warrants for his arrest. *Id.* at 388. The officer saw the driver moving irregularly toward the center console and in the passenger's direction while he waited for the results of the radio check. *Id.* at 389. These irregular movements concerned the officer. *Id.*

¶19 The officer believed that the driver could have concealed a weapon inside or behind the passenger's heavy jacket. *Id.* The officer had then specific, articulable facts that gave rise to the belief that the passenger could be armed and dangerous. *Id.* at 389-90. This justified the pat down of the passenger. *Id.* He found a concealed weapon and methamphetamine. *Id.*

¶20 In *Parker,* each of the three consolidated cases involved the warrantless search of a passenger's belongings in the process of a search incident to lawful arrest of the

driver. *Parker,* 139 Wn.2d at 489-92. The police stopped the car for speeding and arrested the driver for driving with a revoked license. *Id.* at 489.

¶21 The court concluded that "the arrest of one or more vehicle occupants does not, without more, provide the 'authority of law' under article I, section 7 of our state constitution to search other, nonarrested vehicle passengers, including personal belongings clearly associated with such nonarrested individuals." *Id.* at 502-03; *Horrace,* 144 Wn.2d at 392. The lead opinion in *Parker* stated that a "vehicle stop and arrest in and of itself provides officers" an objective, reasonable basis to "ensure their safety by 'controlling the scene.'" *Parker,* 139 Wn.2d at 502. This includes ordering the passenger in and out of the car. *Id.*

¶22 "We have repeatedly recognized that a patdown to ensure officer safety may not be turned into a cursory search for weapons or be used to search for evidence of an independent crime." *Id.* at 502 n.5; *State v. Hudson,* 124 Wn.2d 107, 112, 874 P.2d 160 (1994); *State v. Hobart,* 94 Wn.2d 437, 447, 617 P.2d 429 (1980); *State v. Allen,* 93 Wn.2d 170, 172-73, 606 P.2d 1235 (1980).

■ ¶23 We also recognize that the association with a person suspected of criminal activity "does not strip away the protections of the fourth amendment to the United States Constitution." *State v. Broadnax,* 98 Wn.2d 289, 296, 654 P.2d 96 (1982), *overruled on other grounds by Minnesota v. Dickerson,* 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). Further, even a brief seizure is not justified by mere proximity to criminal activity. *Crane,* 105 Wn. App. at 312; *State v. Cormier,* 100 Wn. App. 457, 461-62, 997 P.2d 950 (2000). Rather, there must be something more to indicate that the particular person seized may be armed or a threat to safety. *Horrace,* 144 Wn.2d at 393-96.

■ ¶24 Here, there was nothing to indicate that the passenger seized was armed or a threat to safety. CP at 78-79. The trial court made no finding that the officer had any safety concerns that justified the initial pat-down

search of Ms. Adams. There were no furtive movements as in *Horrace*. *Horrace*, 144 Wn.2d at 389-91.

¶25 Merely being a passenger in a stolen car does not alone justify such a search under *Terry*. *Id*. at 391-96. The officer has to point to specific, articulable facts that would lead a reasonable person to believe that the passenger could be armed and dangerous. *Id*. at 393. Here, it is not clear what those facts are. Furthermore, there was no finding that Ms. Adams even knew that she was in a stolen car.

¶26 Since there was no reasonable basis for the officer to believe that she was armed and dangerous (outside the fact that she was in a stolen car), there was no legal basis to do a protective search under *Terry*. *Terry*, 392 U.S. at 21; *Horrace*, 144 Wn.2d at 393, 396.

¶27 We conclude the search occurred outside the scope of *Terry*. *Terry*, 392 U.S. at 21; *Horrace*, 144 Wn.2d at 393-96. And the evidence therefore should have been suppressed. *Terry*, 392 U.S. at 21; *Horrace*, 144 Wn.2d at 393-96; *Laskowski*, 88 Wn. App. at 860.

¶28 Accordingly, we reverse the court's decision denying the motion to suppress the drug evidence and the conviction for possession of a controlled substance, methamphetamine.

KULIK, A.C.J., concurs.

¶29 BROWN, J. (dissenting) — Considering the circumstances under the investigatory stop principles of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and the consent exception for a search warrant, I disagree with Jennifer Adams that she was improperly detained as a passenger in a stolen car. Ms. Adams voluntarily disclosed she possessed a sharp object in her pocket and gave a valid consent to remove it that led to the discovery of contraband.

¶30 The police incident report in this case was returned to the trial court without objection from the State because it contained irrelevant, sealed information. The report was

reviewed by and argued to the trial court. The report showed Ms. Adams hesitated when ordered from the car and refused to get into a prone position when first contacted in the early morning stolen car stop.

¶31 Even so, while those facts additionally supported a pat-down frisk under *Terry,* the court focused on the validity of the *Terry* stop and Ms. Adams' consent to retrieve a syringe from her pocket when denying her suppression motion. Ms. Adams volunteered she had a syringe in her pocket in response to an officer's inquiry if she had anything in her pockets that might "stick him." Clerk's Papers (CP) at 79. Ms. Adams gave the officer consent to remove the syringe and the discovery of the illegal drug. Consent is a valid exception to the general rule requiring a search warrant. *State v. Hendrickson,* 129 Wn.2d 61, 71, 917 P.2d 563 (1996). Therefore, consent validity should be our focus, not whether a protective search was justified.

¶32 A passenger's pat-down frisk is not unusual. *See State v. Kennedy,* 107 Wn.2d 1, 11, 726 P.2d 445 (1986) (brief pat-down frisk justified for companion in suspect's car stopped for investigation because companion may endanger officer). And, stopping a stolen vehicle is a more dangerous situation than found in a routine traffic stop. *See State v. Horton,* 136 Wn. App. 29, 37, 146 P.3d 1227 (2006) (infraction stop less risky than felony stop). It is hard to envision any police officer allowing either of the two suspects to walk away without first investigating the relationship of the two persons to the stolen vehicle. Officer Jake Jensen told Ms. Adams she was being "detained during the investigation of the stolen vehicle." CP at 78. Officer Michael McCasland "asked if she had anything on her that would stick him." CP at 79. Nothing suggests the investigatory detention was unreasonably extended up to the point of Ms. Adams' consent.

¶33 In sum, asking if a suspect is armed or possesses sharp, dangerous, or other objects of concern is a routine police safety measure taken during *Terry* investigatory stops that does not, by itself, amount to a frisk or physical

intrusion. Ms. Adams voluntarily disclosed she had a syringe in her pocket and consented to its removal. The contraband was discovered in that process. I would hold the trial court did not err in denying suppression. Given this analysis, I would affirm. Accordingly, I respectfully dissent.

Review denied at 164 Wn.2d 1033 (2008).